|  |  |
|---|---|
| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

| | |  |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:14-CR-28(17) |
| | § | |
| ALEJANDRO LOPEZ | § | |

## MEMORANDUM AND ORDER

Pending before the court are Defendant Alejandro Lopez's ("Lopez") *pro se* motions for transfer to another facility (#1007), home confinement (#1009), and reduction of sentence (#1012). The Government filed a response in opposition (#1019). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny Lopez's motions. Having considered Lopez's motions, the Government's response, Probation's report, the record, and the applicable law, the court is of the opinion that the motions should be denied.

I.   Background

On May 14, 2014, a grand jury in the Eastern District of Texas returned a one-count Second Superseding Indictment charging Lopez and 22 codefendants with Conspiracy to Possess with Intent to Manufacture and Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine or 50 Grams of Methamphetamine (Actual), in violation of 21 U.S.C. § 846. Lopez was released on bond with pretrial conditions.

While on pretrial release, Lopez failed to report to his Probation officer on October 23, 2015, and moved from his father's home in Arizona back to his mother's home in California, but failed to notify the court, defense counsel, and the government in writing of a change in his address or telephone number. Although a Petition for Action on Conditions of Pretrial Release was filed on November 2, 2015, following revocation and detention hearings on November 8,

2015, he was continued on bond and ordered not to travel outside of his supervising district without permission. Thereafter, Lopez failed to appear for a status conference hearing on March 16, 2016, and an arrest warrant was issued. He was arrested in Arizona the following day and has been detained since that time.

Lopez's deadline to enter into a plea agreement was March 16, 2016. More than two weeks later, on April 1, 2016, Lopez pleaded guilty to Count One of the Second Superseding Indictment pursuant to a non-binding plea agreement. On December 20, 2016, the court sentenced Lopez to 188 months' imprisonment, to be followed by 2 years of supervised release. At the sentencing hearing, pursuant to Lopez's request, the court recommended Federal Correctional Institution Safford ("FCI Safford") as his place of confinement. Lopez is currently housed at FCI Safford and has a projected release date of July 12, 2029.

Lopez did not appeal his conviction or sentence. Rather, on January 5, 2018, Lopez filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Case No. 4:18-CV-13, #1). In the motion, Lopez argued that his trial counsel was ineffective for failing to file a notice of appeal. Lopez also faulted his attorney for failing to object to, among other things, the denial of an offense level reduction for acceptance of responsibility. In fact, Lopez's attorney lodged such an objection, which the court overruled at sentencing. Lopez's § 2255 motion was denied by the district court on March 22, 2021 (Case No. 4:18-CV-13, #16). On March 31, 2021, he filed a notice of appeal (Case No. 4:18-CV-13, #18). The following day, on April 1, 2021, Lopez filed a motion for a certificate of appealability (Case No. 4:18-CV-13, #19), which the court denied on April 7, 2020 (Case No. 4:18-CV-13, #20). On February 29, 2021, Lopez filed a motion for a certificate of appealability with the United States Court of Appeals for

the Fifth Circuit, and the Fifth Circuit denied the same on February 23, 2022 (Case No. 21-40251).

Lopez has previously filed multiple *pro se* motions requesting a 3-level downward adjustment for his purported acceptance of responsibility (#s1003, 1005). The court entered a Memorandum and Order denying these motions (#1006). Lopez also filed a *pro se* motion seeking appointment of counsel (#970), which the court denied (#972). On June 1, 2021, the Fifth Circuit affirmed this court's denial of the appointment of counsel and further denied Lopez's motion for sentence reduction he submitted to the appellate court (#1004).

II.   Analysis

    A.   Place of Confinement

Lopez requests to be placed in home confinement (#1009) or, in the alternative, to be transferred from FCI Safford to Federal Correctional Institution Texarkana ("FCI Texarkana") (#1007). The Bureau of Prisons ("BOP") has the sole authority for determining a prisoner's place of incarceration based on several statutory factors, including any recommendation by the sentencing court. *See* 18 U.S.C. § 3621(b); *Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973). Although a sentencing court is permitted to make a recommendation concerning the type of penal or correctional facility, a determination of if and when a prisoner should be allowed to serve the remainder of his sentence in home confinement is left to the discretion, experience, and expertise of the BOP. *See* 18 U.S.C. § 3624(c); *see also McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *United States v. Voda*, 994 F.2d 149, 151 (5th Cir. 1993) ("[A] court may recommend that a sentence imposed under section 3621 be served in a

particular prison or jail, but . . . only the [BOP] has the actual authority to designate the place of incarceration."); *Ambriz v. United States*, 465 F. Supp. 3d 630, 633 (N.D. Tex. 2020) (holding that the court has no authority to compel the BOP to release a prisoner to home confinement); *Livas v. Myers*, 455 F. Supp. 3d 272, 283 (W.D. La. 2020); *United States v. Carden*, No. CR JKB-15-0016, 2020 WL 1873951, at *2 (D. Md. Apr. 15, 2020) (holding that the court does not have the authority to order the defendant released to home detention); *United States v. Yates*, No. 15-40063-01-DDC, 2019 WL 1779773, at *4 (D. Kan. Apr. 23, 2019) ("[I]t is BOP—not the courts—who decides whether home detention is appropriate.").

At sentencing, the court granted Lopez's request for a recommendation that he be designated to FCI Safford, located in Safford, Arizona, which his counsel stated would be "closest to where he would be released." Lopez provides no compelling reason why he now wishes to be transferred to FCI Texarkana, located in Texarkana, Texas. It is quite distant (more than 1,000 miles) from where Lopez and his family resided in Arizona and California at the time of sentencing. Moreover, FCI Safford appears to offer similar vocational training programs as FCI Texarkana. In any event, the court lacks the authority to order that Lopez be placed in home confinement and declines to issue another judicial recommendation as to his place of incarceration.

B.   Reduction in Sentence

Lopez again asks the court to reduce his sentence based on his purported acceptance of responsibility, this time citing to the compassionate release provision of 18 U.S.C. § 3582(c).

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part,

4

amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

### 1. Exhaustion of Administrative Remedies

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion

5

for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F. 4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies. Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d

6

at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

In this instance, Lopez makes no mention of satisfying the exhaustion requirement by submitting a request for compassionate release based on the circumstances raised in the pending motion to the warden of the facility where he is housed. *See United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) (stating that "[i]n order to exhaust her administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in her motion"). Instead, it appears that his relatives and friends wrote letters to the warden of FCI Safford requesting compassionate release on his behalf due to concerns about COVID-19. Acting Warden B. Auterson denied these requests in June 2020. At present, according to the figures available at www.bop.gov, there are 0 inmates (out of a total inmate population of 726) and 0 staff members at FCI Safford who have confined positive cases of COVID-19, and 484 inmates and 75 staff members who have recovered. Therefore, at this time, COVID-19 does not seem to pose an imminent threat at FCI Safford, and, if it did, the court lacks the authority to grant the relief Lopez requests because he has not exhausted his administrative remedies. Moreover, even if Lopez had complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to reduce his sentence.

2.   Criteria for Release

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release, he must establish three criteria. *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).  First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii). *Id.* at 391.  Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]." *Id.* at 392.  Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[1]  *Id.*; *accord United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

Section 3582(c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release.  Rather, Congress elected to delegate its authority to the Commission.  *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

be applied and a list of specific examples"); *Cooper*, 996 F.3d at 287; *Shkambi*, 993 F.3d at 392. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as extraordinary and compelling.[2] However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[3] Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement set forth in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP. *See Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Nevertheless, while recognizing that they are not binding, the court views the Commission's policy statement contained in § 1B1.13 and the commentary thereto as providing guidance regarding the types of reasons that may be deemed sufficiently "extraordinary and compelling" to warrant compassionate release. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020)

---

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1.

[3] U.S.S.G. § 1B1.13 was last amended on November 1, 2018. The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum. The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines. 28 U.S.C. §§ 991(a), 994(a). At present, the Commission has only one voting member.

(upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13). A review of dictionary definitions also sheds light on the meaning of these terms. The word "extraordinary" is defined as "going beyond what is usual, regular, or customary . . . exceptional to a very marked extent," whereas the word "compelling" is defined as "forceful . . . demanding attention . . . convincing." *Extraordinary*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *Compelling*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *see United States v. Mitchell*, No. 15-20609, 2021 WL 1827202, at *2 (E.D. Mich. May 7, 2021). "Courts have interpreted 'extraordinary' in the context of compassionate release as 'beyond what is usual, customary, regular, or common,' and a 'compelling reason' as 'one so great that irreparable harm or injustice would result if the relief is not granted.'" *Mitchell*, 2021 WL 1827202, at *2 (quoting *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *5 (E.D. Mich. May 15, 2020); *United States v. Sapp*, No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020)).

### 3. Acceptance of Responsibility

Here, Lopez, age 32, appears to assert that the court's failure to grant him a 3-level reduction in his offense level due to his alleged acceptance of responsibility qualifies as an extraordinary and compelling reason warranting a reduction in his sentence pursuant to 18 U.S.C. § 3582(c). The court disagrees. Lopez's argument constitutes nothing more than an attempt to revisit determinations made years ago at the time of his sentencing and in subsequent orders in which the court declined to grant him credit for acceptance of responsibility. As explained in the court's prior order (#1006), at sentencing, in accordance with Probation's final recommendation, the court denied Lopez credit for acceptance of responsibility because he did not abide by the

conditions of his pretrial release, did not appear at a pretrial hearing that was set at his counsel's request, and did not timely apprise the court of his intention to enter a guilty plea. Rather, he waited until three days before trial was scheduled to begin to plead guilty, thereby causing the Government to prepare for trial and preventing the court and the Government from allocating their resources efficiently. His repeated motions seeking the same relief continue to impose an unwarranted burden on governmental resources.

A "compassionate release motion 'is not an opportunity to second guess or to reconsider' the sentencing court's original decision." *United States v. Jabateh*, No. CR 18-216-3, 2021 WL 5802493, at *2 (W.D. Pa. Dec. 7, 2021) (quoting *United States v. Roney*, 833 F. App'x 840, 854 (2d Cir. 2020)). The court's judgment of conviction was entered on December 22, 2016. Thus, the 14-day period for filing a notice of appeal expired on January 5, 2016. *See* FED. R. APP. P. 4(b)(1)(A)(i) (requiring that a defendant in a criminal case file a notice of appeal within 14 days after the entry of the judgment or order being appealed); FED. R. APP. P. 26(a)(1)(C) (directing courts to include the last day of a period unless it falls on a Saturday, Sunday, or legal holiday); *United States v. Leijano-Cruz*, 473 F.3d 571, 572 (5th Cir. 2006). Lopez, however, did not file an appeal, and his habeas corpus petition was denied. It has long been recognized that "[t]he principle of finality . . . is essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989). Indeed, as the Supreme Court has observed, "[a] final judgment commands respect." *United States v. Frady*, 456 U.S. 152, 165 (1982). "Once the defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume that he stands fairly and finally convicted." *Id*. at 164. Appreciating the importance of finality, Justice Harlan stated in his concurring opinion in *Mackey v. United States*:

11

> No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing that a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation.

401 U.S. 667, 691 (1971). This principle of finality forecloses Lopez's current endeavor to circumvent the limitations on post-conviction relief by challenging determinations made long ago at sentencing (which he never appealed) under the guise of a compassionate release motion. His most recent efforts evince his continued refusal to fully accept responsibility for his criminal conduct to this day. In short, Lopez has not presented any extraordinary and compelling reasons meriting a reduction of his sentence.

###   4.   Section 3553(a) Factors

The court further finds that compassionate release is not justified in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *Chambliss*, 948 F.3d at 693-94. Lopez's offense of conviction entailed his participation in a drug-trafficking conspiracy involving the distribution of between 15 and 45 kilograms of a mixture or substance containing a detectable amount of methamphetamine or between 1.5 kilograms and 4.5 kilograms of methamphetamine (actual) imported from Mexico. Lopez supplied coconspirators with kilogram quantities of methamphetamine from various sources for distribution to others in the Eastern and Northern Districts of Texas. Lopez also has a prior conviction for theft and a history of substance abuse. Despite the large quantity of methamphetamine involved, Lopez received the

benefit of the safety valve and was sentenced at the bottom of the applicable guideline range. In view of the nature and circumstances of his offense of conviction, Lopez's criminal history, his history of substance abuse, and his failure to comply with the terms of his pretrial release, the court cannot conclude that his early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

In addition, granting Lopez compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence. 948 F.3d at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Chambliss*, 948 F.3d at 693-94; *see Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"). In the instant case, releasing Lopez after he has served only 80 months of his 188-month sentence would similarly minimize the impact of his crime and the seriousness of his

offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct.

III.     Conclusion

Accordingly, Lopez's *pro se* motions for transfer to another facility (#1007), home confinement (#1009), and reduction of sentence (#1012) are DENIED.

SIGNED at Beaumont, Texas, this 28th day of March, 2022.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE